219 So.2d 84 (1969)
Larry GILBERT, Trustee in Bankruptcy of Juvenile World, Inc., Bankrupt, Appellant,
v.
AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, Appellee.
No. 68-350.
District Court of Appeal of Florida. Third District.
February 18, 1969.
Rehearing Denied March 12, 1969.
*85 Leo M. Alpert, Miami, for appellant.
Knight, Underwood, Peters, Hoeveler & Pickle, Miami, for appellee.
Before BARKDULL, HENDRY and SWANN, JJ.
HENDRY, Judge.
The appellant was the plaintiff below and appeals from a final judgment of the circuit court which was rendered pursuant to the defendant-appellee's motion for summary judgment. The defendant had issued to Juvenile World, Inc., a storekeeper's liability policy which provided for coverage for any sums which the insured might become legally obligated to pay as damages because of bodily injury suffered by any person arising out of the ownership, maintenance or use of the insured's premises. Coverage was conditioned, however, on the following "no action" provision which set forth the insured's obligation:
"6. Action against company.
"Coverage.
"No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company * * *."
The construction of this no-action provision is the focal point of this case, as the following facts, all stipulated to by the parties, have raised certain issues of law in regard thereto.
Plaintiff-appellant is presently the Trustee in Bankruptcy of Juvenile World, Inc., and as such is vested with the assets and causes of action of that corporation. On or about February 20, 1961, while the above mentioned storekeeper's liability insurance policy was in full force and effect, a nine-year old minor, Rodney Kostoff, was allegedly injured when a toy device called a "smoke pot" which he purchased from Juvenile World, Inc., ignited while being carried in the youth's hip pocket. Within several days of the accident, the boy's father told one of the officers of Juvenile World, Inc., about the occurrence, but in a jocular and conversational manner. This officer, after considering the nature of his conversation with Rodney's father, concluded that the incident was not an "accident" or "a claim" requiring notification to the insurance company as per the policy's no-action provision, supra, and therefore did not report the incident to the insurance company at that time. Then, almost three months later, Juvenile World, Inc., received a notice of claim letter from the Kostoffs' attorney dated May 10, 1961. This letter was forwarded to the appellee about five days later thereby giving it first *86 notice of Rodney Kostoff's accident within three months of occurrence. On June 5, 1961, the appellee refused to defend the Kostoff claim or perform any of its contractual obligations; its ground for such refusal was that the insured had violated its contractual obligation to give the company notice of the accident and notice of the claim as soon as practicable.
The ensuing legal difficulties encountered by Juvenile World, Inc., during the following years need not be detailed here, although some further facts should be noted in the interest of this opinion's continuity. The Kostoff claim ripened into a common law action, filed in the Dade County Circuit Court, and Juvenile World, Inc., defended.
Subsequent years were economically lean for Juvenile World, Inc., and the bankruptcy proceedings were initiated in the United States District Court for the Southern District of Florida. Meanwhile, the Kostoff claim had not reached finality in the circuit court and was transferred to the court hearing the bankruptcy proceedings. An order dated August 16, 1965, was entered as part of the bankruptcy proceedings which disposed of the Kostoff claim against Juvenile World, Inc. This order held that the corporation had been negligent and that the presently bankrupt estate of the corporation was liable in damages to the Kostoffs in an amount to be fixed by the Referee In Bankruptcy. Ultimately, the entire Kostoff claim was fixed at about $5,520.00 and became a final judgment against the bankrupt estate of Juvenile World, Inc.
In February, 1967, the present action was commenced by Juvenile World, Inc.'s Trustee In Bankruptcy, who claimed that the appellee's refusal to defend in 1961 was the direct and proximate cause of about $7,650.00 worth of damages. Since the facts were stipulated, issue was had on the question of liability and mutual motions for summary judgment brought that issue before the court. The final judgment states no grounds, but merely holds "* * that there is no genuine issue of any material fact and that the issue of law presented should be resolved in favor of the defendant, American Casualty Company of Reading, Pa. * * *." However, light is shed on the trial court's grounds by the appellee's contention that the instant law suit is barred by the five year statute of limitations set forth in § 95.11(3) Fla. Stat., F.S.A. Appellee argues that since the cause of action is predicated on an alleged breach of contractual obligation  the wrongful refusal to defend the insured  that cause of action "accrued" at the date of the alleged breach, i.e., June 5, 1961. We cannot agree and reverse.
When language of a contract is ambiguous and puts the parties in doubt as to their rights under such language, then the provision in doubt should be strictly construed against the party who drew up the contract. Niagara Therapy Mfg. Corp. v. Niagara Cycle Massage of Miami, Inc., Fla.App. 1967, 196 So.2d 474; Allegheny Mutual Casualty Co. v. State, Fla.App. 1965, 176 So.2d 362.
Here, we can plainly read that a condition precedent must be first met before any cause of action accrues against the insurance company. That condition  a final determination by judgment of the Kostoff claim  occurred on July 25, 1966, when the Referee In Bankruptcy entered his Order pursuant to the directions of the Federal District Court which was sitting on the bankruptcy case. We hold that the five year statute of limitation began to run with the rendering of that order.
Reversed.