IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
October 1, 2025 Session

## CINDA HADDON v. LADARIUS VANLIER, ET AL.

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Davidson County**
No. 20C2503         Thomas W. Brothers, Judge

_____

**No. M2023-01151-SC-R11-CV**

_____

In this case, we determine whether prejudgment interest may be awarded in an action brought against a tortfeasor and defended by an uninsured motorist carrier under Tennessee's Uninsured Motorist Act. Tenn. Code Ann. §§ 56-7-1201–1206 (2016 & Supp. 2025). The trial court determined that Plaintiff Cinda Haddon could not recover prejudgment interest because her claim was for personal injury. The Court of Appeals reversed, finding that Ms. Haddon brought a contract action. *Haddon v. Vanlier*, No. M2023-01151-COA-R3-CV, 2024 WL 4590434, at *2–3 (Tenn. Ct. App. Oct. 28, 2024), *perm. app. granted*, (Tenn. March 17, 2025). Accordingly, the Court of Appeals remanded this matter to the trial court for a determination of prejudgment interest. *Id.* at *5. Upon review, we find that this is a personal injury action. Because prejudgment interest is not available in a personal injury action, we reverse the Court of Appeals and reinstate the judgment of the trial court denying Ms. Haddon prejudgment interest.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals**
**Reversed; Judgment of the Trial Court Reinstated**

MARY L. WAGNER, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and HOLLY KIRBY, SARAH K. CAMPBELL, and DWIGHT E. TARWATER, JJ., joined.

Michael A. Johnson, Nashville, TN, and Conor B. Dugan, Grand Rapids, MI, for the appellant, Auto-Owners Insurance Company.

Laura B. Baker and John A. Day, Brentwood, TN, for the appellee, Cinda Haddon.

C.E. Hunter Brush, James A. Beakes III, Allyson E. Lynch, and Corine A. Stark, Nashville, TN, for the amici curiae, American Property Casualty Insurance Association and National Association of Mutual Insurance Companies.

Michael R. Campbell, Douglas Campbell Jr., Chattanooga, TN, and Julie P. Bowling, Columbia, TN, for the amicus curiae, Tennessee Farmers Mutual Insurance Company.

## OPINION

### I.  FACTUAL AND PROCEDURAL BACKGROUND

This case stems from a car accident in which the underlying facts are not in dispute. Cinda Haddon was driving through an intersection when Ladarius Vanlier turned through the intersection and collided with Ms. Haddon's vehicle.  To recover for the injuries she sustained in the accident, Ms. Haddon sued Mr. Vanlier alleging negligence and negligence *per se*.

After filing her lawsuit, Ms. Haddon served process on her uninsured motorist carrier, Auto-Owners Insurance Company ("Auto-Owners"), as required under Tennessee's Uninsured Motorist Act ("UM Act" or the "Act").  Tenn. Code Ann. § 56-7-1206(a) (2016).[1]  Auto-Owners filed an Answer and Cross-Complaint against Mr. Vanlier.[2]  Auto-Owners raised several contract-based defenses in its Answer.  While Auto-Owners amended its pleadings throughout the course of the action, defenses referencing the insurance policy issued to Ms. Haddon remained in each amended pleading.  For instance, in each Answer, Auto-Owners "reserve[d] the right to raise any and all policy defenses, policy violations, or other breach of conditions of the policy."[3]

---

[1] The UM Act provides:

> "Any insured intending to rely on the coverage required by this part shall, if any action is instituted against the owner and operator of an uninsured motor vehicle, serve a copy of the process upon the insurance company issuing the policy in the manner prescribed by law, as though the insurance company were a party defendant. The company shall thereafter have the right to file pleadings and take other action allowable by law in the name of the owner and operator of the uninsured motor vehicle or in its own name; provided, that nothing in this subsection (a) shall prevent the owner or operator from employing counsel of the owner's own choice; and provided, further, that the evidence of service upon the insurance carrier shall not be made a part of the record."

Tenn. Code Ann. § 56-7-1206(a).

[2] The basis of this cross-claim was Auto-Owners' right of subrogation under Tennessee Code Annotated section 56-7-1204.  After trial, Auto-Owners voluntarily dismissed its Cross-Complaint against Mr. Vanlier without prejudice.

[3] Auto-Owners moved for a partial summary judgment against Ms. Haddon on the issue of her damages.  The trial court denied this motion as untimely.

Mr. Vanlier could not be served with process and did not participate in the action. Ms. Haddon attempted to serve Mr. Vanlier twice, but both summonses were returned with the notation: "not to be found in my county." Because Mr. Vanlier could not be served, Ms. Haddon proceeded directly against Auto-Owners. *See* Tenn. Code Ann. § 56-7-1206(d).[4] Then, under Tennessee Code Annotated section 56-7-1206(a), Auto-Owners elected to defend the action in its own name.

The case proceeded to a jury trial. At the close of proof, both parties moved for a directed verdict on several issues. The trial court found as a matter of law that: (1) Mr. Vanlier was at fault for the accident, (2) Mr. Vanlier was uninsured, and (3) Auto-Owners had an enforceable uninsured motorist policy that protected Ms. Haddon on the date of the collision.

Issues related to damages and causation—to the extent it affected the amount of damages to be awarded—were submitted to the jury. The jury awarded Ms. Haddon $320,000 in damages, which included $100,000 for past pain and suffering, $10,000 for future pain and suffering, $30,000 for past loss of ability to enjoy life, $10,000 for future loss of ability to enjoy life, $9,735.43 for permanent injury, and $160,264.57 for past medical expenses. The entirety of the damages awarded stemmed from Ms. Haddon's personal injuries.

After trial, Ms. Haddon moved for prejudgment interest. She argued that the balance of equities supported her award. Auto-Owners argued that Ms. Haddon was not entitled to prejudgment interest because Ms. Haddon's claim was for personal injury.

The trial court denied prejudgment interest. While the court agreed that the equitable considerations would support an award of prejudgment interest, it found that prejudgment interest was not allowed under Tennessee law because Ms. Haddon's case was a personal injury action. Ms. Haddon appealed.

The Court of Appeals reversed. It found that "suits against an uninsured motorist company" are contract claims. *Haddon*, 2024 WL 4590434, at *2–3. Because Ms. Haddon's claim was based in contract, the Court of Appeals determined that Tennessee's prohibition on prejudgment interest for personal injury actions did not apply. *Id.* at *3–5. Finding "no abuse of discretion in the trial court's ruling that the equities favor an award of prejudgment interest," the Court of Appeals reversed and remanded for the trial court to

---

[4] "In the event that service of process against the uninsured motorist, which was issued to the motorist's last known address, is returned by the sheriff or other process server marked, 'Not to be found in my county,' or words to that effect, or if service of process is being made upon the secretary of state for a nonresident uninsured motorist and the registered notice to the last known address is returned without service on the uninsured motorist, the service of process against the uninsured motorist carrier, pursuant to this section, shall be sufficient for the court to require the insurer to proceed as if it is the only defendant in the case." Tenn. Code Ann. § 56-7-1206(d).

determine the proper amount of prejudgment interest. *Id.* at *5. Auto-Owners sought permission to appeal, which this Court granted.

## II.    STANDARD OF REVIEW

A decision to award or deny prejudgment interest is within the sound discretion of the trial court, and the decision will not be disturbed by an appellate court absent an abuse of discretion. *Spencer v. A-1 Crane Serv., Inc.*, 880 S.W.2d 938, 944 (Tenn. 1994). A trial court abuses its discretion when it either (1) applies the incorrect legal standard, (2) reaches an illogical conclusion, or (3) bases its decision on a clearly erroneous assessment of the evidence. *Castillo v. Rex*, 715 S.W.3d 321, 328 (Tenn. 2025). Here, we must determine whether the trial court applied the correct legal standard when it denied Ms. Haddon prejudgment interest.

Whether one may receive an award of prejudgment interest turns on the nature of the claim asserted. Under Tennessee Code Annotated section 47-14-123 (2013), courts may award prejudgment interest "as permitted by the statutory and common laws of the state as of April 1, 1979 . . . ." Under our common law that governed in 1979, prejudgment interest was not available in personal injury claims. *Louisville & N.R. Co. v. Wallace*, 17 S.W. 882, 883 (Tenn. 1891); *see also Francois v. Willis*, 205 S.W.3d 915, 916 (Tenn. Ct. App. 2006) (Koch, J.). But prejudgment interest was available, within the discretion of a trial court, in breach of contract claims regardless of whether damages were liquidated or unliquidated.[5] *See Johnson v. Tenn. Farmers Mut. Ins. Co.*, 556 S.W.2d 750, 752 (Tenn. 1977); *see also Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927–29 (Tenn. 1998).

Consequently, whether the trial court abused its discretion in applying the appropriate standard for prejudgment interest depends on the nature of Ms. Haddon's claim. If Ms. Haddon's claim sounds in contract, then the trial court abused its discretion by applying the incorrect standard. To the contrary, if the claim sounds in personal injury, then the trial court applied the correct standard, and thus, did not abuse its discretion in denying Ms. Haddon prejudgment interest. Ascertaining the nature of a claim is a question of law which we review de novo with no presumption of correctness. *See Gunter v. Lab'y Corp. of Am.*, 121 S.W.3d 636, 639 (Tenn. 2003); *Redwing v. Cath. Bishop for Diocese of Memphis*, 363 S.W.3d 436, 457 (Tenn. 2012).

---

[5] In breach of contract actions, a trial court may in its discretion award prejudgment interest if the equitable considerations weigh in favor of awarding prejudgment interest. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927–29 (Tenn. 1998). Here, the parties dispute the trial court's findings that the equities would weigh in favor of an award of prejudgment interest, if it were available. Because we find that this is a personal injury action and prejudgment interest is not available, we need not address this issue.

## III. ANALYSIS

This Court determines the nature of a claim by examining the "gravamen" of the action. *See, e.g.*, *Benz-Elliott v. Barrett Enters., LP*, 456 S.W.3d 140, 147–52 (Tenn. 2015); *Jacobi v. VendEngine Inc.*, No. M2023-01459-COA-R3-CV, 2025 WL 400697, at *3 (Tenn. Ct. App. Feb. 5, 2025) (noting that the "gravamen" test has been applied in other cases to determine the governing law for statutes of limitations, governmental tort immunity, subject matter jurisdiction, and libel).

The gravamen "refers to the substantial point, the real purpose, or the object of an action," and not the "designation or form litigants ascribe" to it. *Benz-Elliott*, 456 S.W.3d at 148 (quoting *Redwing*, 363 S.W.3d at 457 (citation modified)). This Court previously held that the gravamen analysis requires consideration of (1) "the legal basis of the claim" and (2) "the type of injuries for which damages are sought." *Id.* at 151–52 (citation omitted) (noting that ascertaining the gravamen is a fact-intensive inquiry); *see also McFarland v. Pemberton*, 530 S.W.3d 76, 109–10 (Tenn. 2017). After careful examination of Ms. Haddon's claim, we find that its gravamen lies in personal injury, not contract.

### *Schleif*

Rather than applying our two-part gravamen test, Ms. Haddon contends that *Schleif v. Hardware Dealer's Mutual Fire Insurance Co.* dictates the nature of her claim, which she argues is in contract. 404 S.W.2d 490, 491 (Tenn. 1966). Respectfully, we disagree.

In *Schleif*, the plaintiffs sued their UM carrier directly for personal injuries sustained in a hit-and-run accident after the UM carrier denied liability under the plaintiffs' policy. *Id*. This Court found that the cause of action was on the insurance contract. *Id*. Accordingly, we applied the six-year statute of limitations for contract claims. *Id*. We explained that *Schleif* presented an exceptional circumstance "where the gravamen of the action d[id] not depend on what the damages [were] and how they [were] measured."[6] *Id*. at 492.

Unlike Ms. Haddon's claim, *Schleif* was a contract action. The Schleifs initiated their lawsuit in response to the UM carrier denying coverage under the uninsured motorist clause. *Id*. at 491; *see also Myint*, 970 S.W.2d at 922–23 (where an insurer's refusal to pay under the insurance policy gave rise to the plaintiffs' breach of contract action). The insurance policy formed the basis of the Schleifs' action. *See Schleif*, 404 S.W.2d at 491. Whereas in this case, Ms. Haddon's action is neither based on her UM policy nor does she allege that Auto-Owners denied coverage or otherwise breached its contractual obligations.

---

[6] When we decided *Schleif*, our "gravamen" inquiry focused almost exclusively on the nature of damages sought. *See Schleif*, 404 S.W.2d at 491–92 (collecting cases); *Benz-Elliott*, 456 S.W.3d at 149.

Further, *Schleif* was decided prior to the enactment of the UM Act.[7]  Unlike *Schleif*, where we held that the "plaintiffs' only action for redress of injuries is on the contract with the insurance company," the UM Act plays a crucial role in Ms. Haddon's case.  *Id.* at 493. It allows Ms. Haddon to proceed with her action despite the inability to effectuate service of process on Mr. Vanlier.  *See* Tenn. Code Ann. § 56-7-1206(d).  Without the UM Act, Mrs. Haddon would have no claim.  *See, e.g.*, *McCall v. Maryland Cas. Co.*, 516 S.W.2d 353, 354–55 (Tenn. 1974); *Brewer v. Richardson*, 893 S.W.3d 935, 937–39 (Tenn. 1995) (discussing how insureds could not maintain direct actions against their UM carrier if the uninsured motorist defendant could not be served with process until the UM Act allowed such claims to proceed).  Finding *Schleif* distinguishable, we now turn to our two-part gravamen test.

*Legal Basis of Ms. Haddon's Claim*

To determine the gravamen, we first examine the legal basis of the claim.  In her complaint, Ms. Haddon alleges that Mr. Vanlier had a duty to exercise "reasonable and due care in the operation of the vehicle he was driving so as to avoid injury to other persons using the roadway, including Plaintiff Cinda Haddon."  Mr. Vanlier allegedly breached that duty by failing to "maintain a proper lookout," "pay proper attention," "keep the vehicle he was driving under proper control," and "yield the right-of-way."  Ms. Haddon states that such conduct was negligent and negligent *per se*.

Based on these allegations, Ms. Haddon is arguing that Mr. Vanlier failed to abide by a well-settled duty imposed by law. *See McCall v. Wilder*, 913 S.W.2d 150, 156 (Tenn. 1995) (drivers "owe a duty to act reasonably in light of the inherent dangers associated with driving"); *Smith v. Fisher*, 11 Tenn. App. 273, 279 (Tenn. Ct. App. Oct. 14, 1929), *perm. app. denied*, (Tenn. Apr. 5, 1930) ("The law requires the driver of a motor vehicle to exercise ordinary or reasonable care to avoid injury.").  Therefore, the legal basis of Ms. Haddon's claim is in tort.  S*ee* 86 C.J.S. Torts § 4 (2026) ("A 'tortious act' is a unilateral invasion of a right taken *without regard to any agreement or contract*, and 'tort obligations' are imposed by law *apart from, and independent of, any promises made or manifested intention of the parties to an agreement*.") (emphasis added)).

Conversely, the legal basis of Ms. Haddon's claim is not contractual.  Unlike the *Schleif* action, Ms. Haddon did not bring her claim based on her UM policy.  The complaint contains no allegations related to a contract.  We also find nothing in the complaint alleging that Auto-Owners denied coverage under the UM policy, or any other conduct that could amount to a breach of a contractual duty.  *See Watry v. Allstate Prop. and Cas. Ins. Co.*, No. M2011-00243-COA-R3-CV, 2011 WL 6916802, at *4 (Tenn. Ct. App. Dec. 28, 2011) ("To state a claim for breach of contract, [plaintiff] must describe some conduct by [the insurer]

---

[7] As neither party asked this Court to overrule *Schleif*, we offer no opinion as to its continued viability in light of these legislative changes.

that was inconsistent with one or more provisions of the insurance policy and that he suffered damages as a result.").

Even still, Ms. Haddon contends that her claim sounds in contract because Auto-Owners raised contract-based defenses. To be sure, a consequence of the UM Act is that insurers like Auto-Owners are required to raise contract issues and defenses in an action under the UM Act—rather than in a subsequent action—or else "be estopped from later relying on it as a defense." *See Harvey v. Birchfield*, 535 S.W.2d 334, 335 (Tenn. 1976). That requirement, especially under these facts, does not dictate that the legal basis of Ms. Haddon's action is in contract. Therefore, this argument fails.

We also find that Ms. Haddon had no legally cognizable contract claim that she *could have* asserted in her complaint.[8] Ms. Haddon certainly had a contract with Auto-Owners that provided uninsured motorist coverage. *See Cavalier Ins. Corp. v. Osment*, 538 S.W.2d 399, 403 (Tenn. 1976) (Humphreys, J., concurring) ("[T]he insured has a direct contract with the insurance carrier for the payment of his damages."). But the mere existence of that contract does not give rise to a legally cognizable action for breach of contract.[9]

Auto-Owners, and uninsured motorist carriers generally, are not contractually obligated to pay its insureds damages unless and until the tortfeasor is found legally liable. *Davis v. Grante Mut. Cas. Grp.*, No. M2016-02239-COA-R3-CV, 2017 WL 4331041, at *3 (Tenn. Ct. App. Sept. 28, 2017) ("[I]t is well-settled that there can be no legal liability established against the uninsured motorist carrier without first properly commencing a claim against the tortfeasor.") (citation modified)); *see also* Tenn. Auto. Liab. Ins. § 17:1 ("Uninsured motorist coverage indemnifies only against losses and damages for which an uninsured or uninsured motorist is legally liable."). In Ms. Haddon's case, Mr. Vanlier's liability was a key issue that was not resolved until trial. Because Auto-Owners did not have a contractual obligation to pay Ms. Haddon until Mr. Vanlier became liable at trial, there was no breach of contract that could have served as the legal basis of Ms. Haddon's action.

*The Type of Injury for Which Damages are Sought*

We next consider the type of injury for which Ms. Haddon sought damages. According to Ms. Haddon's complaint, she suffered and will continue to suffer damages as a direct and proximate result of Mr. Vanlier's conduct. Specifically, Ms. Haddon sought damages to recover "medical bills and other expenses," "pain and suffering," "lost enjoyment of life," "lost earning capacity," and permanent disfigurement.

---

[8] During oral argument, Ms. Haddon implied that she had a contract claim against Auto-Owners but was precluded from asserting that claim under the UM Act. As discussed herein, we find this argument unconvincing.

[9] The policy issued to Ms. Haddon is not in the record before us.

The proof presented at trial predominantly focused on Ms. Haddon's physical and emotional injuries. Several medical professionals who examined and treated Ms. Haddon's injuries testified at trial. A family member testified about the impact of Ms. Haddon's injuries on her daily life. Ms. Haddon also testified regarding the extent of her injuries and related medical expenses.

At the close of proof, the trial court instructed the jury to determine reasonable compensation for the following categories of damages: pain and suffering, loss of enjoyment of life, disfigurement, permanent injury, and medical expenses—consistent with the damages set forth in Ms. Haddon's complaint. These were the only categories for damages on the verdict form. With the exception of disfigurement, Ms. Haddon received a judgment for damages in each category.

Conversely, Ms. Haddon did not seek, nor was she awarded any contractual remedies. In her complaint, Ms. Haddon did not pray for any relief that ordinarily follows a contract action, like specific performance, restitution, or consequential and reliance damages. *See, e.g.*, *Chambliss, Bahner and Crawford v. Luther*, 531 S.W.2d 108, 110 (Tenn. Ct. App. 1975). Then, at trial, the jury did not receive any instruction on contract damages, and the verdict form did not include contract damages as a possible award. Based on the allegations in her complaint as well as the proof and damages awarded at trial, we find that Ms. Haddon exclusively sought personal injury damages.

\*     \*     \*

In sum, because the legal basis of Ms. Haddon's action lies in tort and she sought damages for personal injury, we conclude that the gravamen of her action is for personal injury. Because Ms. Haddon's action is a personal injury action, she is not entitled to prejudgment interest under our current law. Tenn. Code Ann. § 47-14-123; *Wallace*, 17 S.W. at 883.

A different holding would contradict the UM Act. The UM Act gives the insured only "the protection that he *would have had* if the alleged tortfeasor had assumed his own financial responsibility by purchasing liability insurance." *Garrison v. Bickford*, 377 S.W.3d 659, 666 (Tenn. 2012) (quoting *Stallcup v. Duncan*, 684 S.W.2d 643, 646 (Tenn. Ct. App. 1984)) (emphasis added); *Lady v. Kregger*, 747 S.W.2d 342, 345 (Tenn. Ct. App. 1987) ("The intention of the Legislature in enacting T.C.A. § 56-7-1206 was to provide an efficient procedure whereby the Plaintiffs could obtain complete relief when injured by an uninsured motorist."). Permitting prejudgment interest in these cases would mean Ms. Haddon and other similarly situated plaintiffs could improperly benefit from the mere happenstance that the actual tortfeasor is inadequately insured or unable to be served with process.

## IV. CONCLUSION

Because the gravamen of Ms. Haddon's action is for personal injury, she is not entitled to prejudgment interest. Therefore, we reverse the judgment of the Court of Appeals and reinstate the judgment of the trial court. Costs of this matter are assessed against Appellee, Cinda Haddon, for which execution may issue.

MARY L. WAGNER, JUSTICE